UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LISA JEAN WEST<br><br>*Plaintiff*,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>*Defendant*. | No. 3:17-cv-1997 (MPS) |

## MEMORANDUM AND ORDER

In this appeal from the Social Security Commissioner's denial of benefits, claimant Lisa Jean West[1] moves for judgment on the pleadings, arguing that the ALJ failed to properly weigh the medical opinion evidence and erroneously discounted Ms. West's testimony. (ECF No. 15 at 2–10; ECF No. 19.) The Commissioner filed a motion to affirm, arguing that the ALJ gave appropriate weight to the medical opinions and that substantial evidence supported the ALJ's finding that Ms. West was not disabled. (ECF No. 18 at 5–13.) For the reasons that follow, I GRANT in part and DENY in part West's motion for judgment on the pleadings (ECF No. 14), DENY the Commissioner's motion to affirm (ECF No. 18), and REMAND for further proceedings.

I.  **Background and Legal Standard**

I assume the parties' familiarity with Ms. West's medical history (summarized in a joint stipulation of facts filed by the parties, ECF No. 16, which I adopt and incorporate herein by reference), the ALJ opinion, the record, the parties' briefs, and the five sequential steps used in the

---

[1] Claimant is referred to throughout the record as Ms. West, Ms. West Cole, or Ms. Cole. For purposes of consistency, I refer to the claimant in this opinion as "West."

1

analysis of disability claims. I cite only those portions of the record and the legal standards necessary to explain this ruling.

"A district court reviewing a final . . . decision pursuant to . . . 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). As such, the Commissioner's decision "may be set aside only due to legal error or if it is not supported by substantial evidence." *Crossman v. Astrue*, 783 F. Supp. 2d 300, 302–03 (D. Conn. 2010). The Second Circuit has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citation and quotation marks omitted). Substantial evidence must be "more than a mere scintilla or a touch of proof here and there in the record." *Id.*

## II. Discussion

The ALJ determined here at Steps Two and Three that West had three severe impairments (degenerative disc disease, carpal tunnel syndrome, and asthma), but that West's impairments did not meet or equal a Listing. (R. 14–15.) At Step Four, the ALJ concluded that West had the residual functional capacity ("RFC") to perform light work, with certain functional limitations.[2] (R. 16.) For the RFC analysis, the ALJ accorded "great weight" to the opinion of the state's non-examining consultant, Dr. Jeanne Kuslis, which indicated that West could perform light work, and "little weight" to the opinions of Dr. Bulent Atac, West's primary treating physician, and Dr. James Marshall, the Social Security Administration's examining physician, which both supported more

---

[2] Those functional limitations were that West could: never climb ladders, ropes, or scaffolds or tolerate exposure to hazards such as open moving machinery; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; frequently finger and handle bilaterally; and never tolerate exposure to extreme cold. (R. 16.) In addition, the ALJ found that West required the ability to change positions for two to three minutes, from sitting to standing or from standing to sitting, every hour. (*Id.*)

severe functional limitations. (R. 20–21.) The ALJ also discounted West's testimony concerning the "intensity, persistence and limiting effects" of her symptoms as "not entirely consistent with the medical evidence and other evidence in the record." (R. 19.) West now argues that the ALJ improperly gave Dr. Kuslis' opinion more weight than those of Dr. Atac and Dr. Marshall, and that the ALJ also should not have discounted West's testimony. (ECF No. 15 at 2–13.)

I conclude that the ALJ properly applied the "treating physician rule" to Dr. Atac's opinion, and the ALJ's decision to give both Dr. Atac and Dr. Marshall's opinion "little weight" was supported by substantial evidence. However, the ALJ improperly relied on Dr. Kuslis' opinion, which did not address subsequent evidence that undercut its conclusions, in formulating the RFC. This error warrants remand. Accordingly, I do not reach West's challenge to the ALJ's decision to discount her testimony on the "intensity, persistence and limiting effects" of her symptoms.

### A. Dr. Atac's Opinion

West argues that the ALJ "grossly mischaracterized the record" in giving "little weight" to the medical opinion of West's primary treating physician, Dr. Bulent Atac, and failed to correctly apply the "treating physician rule" to his opinion. (ECF No. 15 at 3–6.) Because the ALJ applied the substance of the "treating physician rule," and the ALJ's decision to give Dr. Atac's opinion "little weight" was supported by substantial evidence, I conclude that the ALJ made no error.

Under the "treating physician rule," "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citation and quotation marks omitted); *see* 20 C.F.R. § 404.1527(c)(2) (effective

Aug. 24, 2012 to March 26, 2017) (same).[3] However, "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). "The regulations further provide that even if controlling weight is not given to the opinions of the treating physician, the ALJ may still assign some weight to those views, and must specifically explain the weight that is actually given to the opinion." *Schrack v. Astrue*, 608 F. Supp. 2d 297, 301 (D. Conn. 2009); *see also* 20 C.F.R. § 404.1527(c)(2) (effective Aug. 24, 2012 to March 26, 2017) ("When we do not give the treating source's medical opinion controlling weight, we apply the [following] factors . . . in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."). In deciding how much weight to give a treating physician's opinion, the ALJ must explicitly consider:

> (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.

*Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (internal citations, quotation marks, and alterations omitted). "The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id.* (citations omitted). Nonetheless, "slavish recitation of each and every factor [is not required] where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

---

[3] The regulations in place at the time of the ALJ's decision, which was issued on July 18, 2016, are the regulations applied on appeal. *See Lowry v. Astrue*, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying the version of 20 C.F.R. § 416.912 in effect when the ALJ adjudicated the claim).

4

The ALJ first accurately summarized the relevant contents of Dr. Atac's opinion, a Disability Impairment Questionnaire. (R. 20; R. 389–93. (Feb. 8, 2016 opinion of Dr. Atac).) The ALJ then concluded that the opinion merited "little weight, as it is not supported by explanation and is not supported by the relevant medical evidence." (R. 20.) The ALJ reasoned that the functional limitations Dr. Atac described were "inconsistent with the longitudinal medical record," including: "neurological examinations which documented increased tone of the lumbar paraspinals and some decrease in sensation in an L4-L5 distribution without loss of motor strength, coordination or reflexes and with normal gait"; "physical examinations by the treating rheumatologist, Dr. Dasari, [which] did not reveal focal neurological deficits"; imaging studies, which "document only mild degenerative changes"; and West's own activities of daily living. (R. 20.)

The ALJ here correctly applied the substance of the "treating physician" rule to Dr. Atac's opinion. In giving the opinion "little weight," the ALJ necessarily determined that Dr. Atac's opinion did not merit controlling weight. West argues that the ALJ erred by not giving Dr. Atac's opinions controlling weight. (ECF No. 15 at 5.) But I disagree, as the ALJ's determination that Dr. Atac's opinion was "inconsistent with the other substantial evidence," 20 C.F.R. § 404.1527(c)(2) (effective August 24, 2012 to March 27, 2017), is itself supported by substantial evidence in the "longitudinal medical record" cited by the ALJ. (R. 20; *see* R. 336, 338 (normal examination of motor skills but for "minimally increased" tone in the lumbar paraspinal region); R. 401 (pelvic x-ray by Dr. Dasari notes "mild joint space narrowing"); *see also* R. 394–95 (in February 2016, Dr. Cohen notes normal strength and gait and slight decreased sensation in L-4 and L-5, "consistent with her MRI findings of a L5-S1 disc bulge and foraminal narrowing at the L5-S1"). Further, the ALJ then applied each of the relevant factors to determine how much weight

5

the opinion was due. *See* 20 C.F.R. § 404.1527(c) (effective Aug. 24, 2012 to March 26, 2017) ("Unless we give a treating source's medical opinion controlling weight . . . we consider all of the following factors in deciding the weight we give to any medical opinion."). As described above, the ALJ explicitly considered the consistency of the opinion with the record evidence and whether Dr. Atac's opinion was "[]supported by explanation." (R. 20.) While the ALJ did not address Dr. Atac's specialty in the same paragraph, the ALJ recognized only one page prior that Dr. Atac was West's "primary care provider." (R. 19.) And, while the ALJ did not explicitly acknowledge the length of the treating relationship, the ALJ implied that Dr. Atac had treated West "during the relevant period"—here, March 4, 2014 to the date of decision, July 18, 2016. (R. 19 ("The claimant also received treatment for asthma during the relevant period. Her primary care provider, Bulent Atac, M.D., prescribed Spiriva, Pulmacort, and Proventil inhalers."); R. 12, 23 (relevant period).) In addition, the first page of Dr. Atac's February 8, 2016 opinion, which is cited by the ALJ, expressly states that he had treated West monthly since February 26, 2014. (R. 389.) Accordingly, the ALJ considered in substance each of the required *Greek* factors, and so committed no legal error. *See Johnson v. Berryhill*, No. 3:17-CV-1255 (MPS), 2018 WL 6381096, at *2 (D. Conn. Dec. 6, 2018) (finding no legal error where ALJ "in substance applied each of the *Greek* factors").

Further, the ALJ's determination that Dr. Atac's opinion merited "little weight" was supported by substantial record evidence. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) ("[W]hether there is substantial evidence supporting the appellant's view is not the question . . . rather, we must decide whether substantial evidence supports the ALJ's decision."). In particular, the ALJ's finding that Dr. Atac's opinion was "inconsistent with the longitudinal medical record," including "neurological examinations which

6

documented increased tone of the lumbar paraspinals and some decrease in sensation in an L4-L5 distribution without loss of motor strength, coordination or reflexes and with normal gait" was supported by Dr. Cohen's examinations. (R. 20; *see* R. 336, 338 (May and August 2014 examinations by Dr. Cohen documenting full motor strength, normal gait, coordination, and reflexes, and "minimally increased [tone] in the lumbar paraspinal region"). Similarly, the ALJ correctly stated that "physical examinations by the treating rheumatologist, Dr. Dasari, did not reveal focal neurological deficits" and that imaging studies "document only mild degenerative changes." (R. 20; *see* R. 396–402 (no significant findings from March 2016 x-ray by Dr. Dasari except "[b]ilateral osteophytes . . . at the femoral acetabular joints with mild joint space narrowing" were seen on the pelvic X-ray), R. 394–95 (Dr. Cohen notes in February 2016 that West had "MRI findings of a L5-S1 disc bulge and foraminal narrowing at the L5-S1"). Accordingly, the Court finds no error in ALJ's decision to give Dr. Atac's opinion "little weight."

### B. Dr. Marshall's Opinion

West also argues that the ALJ gave insufficient weight to the Administration's own examining physician, Dr. James Marshall. (ECF No. 15 at 6–7.) I disagree, as the ALJ's determination was supported by substantial evidence.

Consulting examiners are not treating sources, and the Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013). Nonetheless, the ALJ has an obligation to explain how much weight to accord to a consulting examiner's opinion. *Id.*; 20 C.F.R. § 404.1527(c) (effective Aug. 24, 2012 to March 26, 2017) ("Regardless of its source, we will evaluate every medical opinion we receive.").

The ALJ summarized Dr. Marshall's July 2014 opinion as follows:

7

> Clinical findings includes spasm and tenderness over the spine from the cervical to the lumbrosacral regions, range of motion limited by spasms, grip strength of 3/5 in the left hand and 2/5 in the right hand, and mildly antalgic gait favoring of the left side. Dr. Marshall assessed the claimant as having extensive degenerative disease of the spine absent imaging studies or other objective evidence, contrary to the medical evidence supplied by her treating providers. On that basis, he opined that she would be able to sit or stand for only 30 minutes.
> [. . .]
> He further opined that her carpal tunnel syndrome would cause a significant limitation in the use of her hands (Id.).

(R. 20–21.) The ALJ concluded that Dr. Marshall's opinion should be accorded "little weight," because it was "based on the claimant's reports of her symptom severity and functioning rather than objective medical evidence." (R. 21.) The ALJ cited objective evidence of full hand strength and a lack of Tinel's sign[4] (*id.* (citing R. 364 (full strength in May 2014), R. 394 (Feb. 2016 lack of Tinel's sign)), as well as evidence demonstrating that West engaged in a "wide range of daily activities" before and after Dr. Marshall's consultative examination. (R. 21 (citing R. 212 (noting in April 2014 that West cooked, washed clothes for family), R. 246 (noting in September 2014 that West did light cleaning for her family).)

Here, the ALJ's decision to give Dr. Marshall's opinion little weight was supported by substantial evidence. *See Randall*, 2018 WL 4204438, at *4 (affirming ALJ's weighing of examining consultant under substantial evidence standard). Although the ALJ incorrectly stated that Dr. Marshall's examination was solely "based on the claimant's reports of her symptom severity and functioning," (R. 21), the record evidence supports the ALJ's finding that Dr. Marshall's conclusions on West's spinal injuries and carpal tunnel merited "little weight." First, around the time of Dr. Marshall's exam, the treatment notes of West's treating neurologist, Dr.

---

[4] A Tinel's sign is a "a tingling sensation felt in the distal portion of a limb upon percussion of the skin over a regenerating nerve in the limb." *Tinel's sign*, <u>Merriam-Webster Dictionary</u> accessible at <u>https://www.merriam-webster.com/medical/Tinel%27s%20sign</u> (last accessed January 11, 2019).

Joel Cohen, reflect only a "minimally increased" motor tone in the lumbar paraspinal region with full range of motion in the neck. (*See, e.g.,* R. 336 (May 2014), R. 338 (August 2014).) Second, several reports from Dr. Cohen in addition to those the ALJ cited show full strength "throughout all motor groups" and lack of Tinel's finding. (*See, e.g.,* R. 368 (October 2014), R. 370 (December 2014).) To the extent that Dr. Marshall's opinion conflicted with Dr. Cohen's reports and the other record evidence cited by the ALJ, the ALJ was entitled to resolve the conflict by giving "little weight" to Dr. Marshall's conclusions. *See Randall*, 2018 WL 4204438, at *4 ("Genuine conflicts in the medical evidence are for the Commissioner to resolve." (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002))).[5] Third and finally, the fact that Dr. Marshall only examined West once (R. 321–25) further undercuts the significance of his opinion. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order) (affirming ALJ's decision not to adopt many of doctors' conclusions supported in part by fact that doctor examined plaintiff only once); *see also Randall*, 2018 WL 4204438, at *4. The ALJ's decision to give Dr. Marshall's opinion only "little weight" was supported by substantial evidence.

### C. Dr. Jeanne Kuslis

The Commissioner claims that the ALJ properly gave Dr. Kuslis' opinion great weight, because the "ALJ was entitled to rely on the well-supported medical assessment from a non-examining medical expert . . . over assessments from treating or examining sources like Drs. Atac and Marshall, even if . . . additional evidence was submitted after the non-examining medical expert's opinion was issued." (ECF No. 18 at 6.) Because that subsequent evidence undercut Dr. Kuslis' conclusions, I disagree and remand for further consideration of this issue.

---

[5] West argues that the "ALJ also failed to explain how Ms. West's daily activities contradict the opinions from Dr. Marshall." (ECF No. 15 at 5.) The Court need not resolve this issue, as the above medical evidence in the record supports the ALJ's conclusion.

9

Generally speaking, the ALJ is entitled to give the opinions of non-examining sources more weight than those of treating or examining sources where there is record evidence to support such a determination. *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (recognizing that the applicable regulations "permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record") (citing 20 C.F.R. §§ 404.1527[e], 416.927[e]).[6] It is also true that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. Nonetheless, the ALJ may not credit a non-examining physician's opinion over that of a treating physician's where the non-examining physician's opinion considered less than the full record and the subsequent medical evidence may have altered the opinion.

In *Hidalgo v. Bowen*, under the regulations then in effect, the Second Circuit rejected an ALJ's decision that relied exclusively on the opinion of a non-examining consultant, in part because the non-examining physician reviewed a limited record that did not include subsequent clinical findings, such as clinical notes of a treating physician and hospital records including X-rays. 822 F.2d 294, 295–96, 298 (2d Cir. 1987). Because this subsequent evidence "confirmed" the RFC determination of the primary treating physician and "may have altered [the non-

---

[6] West argues that the regulations provide that "[t]he findings from a non-treating, non-examining physician who is not a specialist and who reviews a markedly undeveloped record *cannot be* given greater weight than well-supported opinions from a treating doctor." (ECF No. 15 at 4 (emphasis added).) This is not a true as a rule. The cited authority, SSR 96-6P, provides only one example of when "opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources," not that the absence of such those circumstances mean that an ALJ cannot give greater weight to the non-examining source. SSR 96-6P, 1996 WL 374180 (July 2, 1996); *see Worthy v. Berryhill*, No. 3:15-CV-1762 (SRU), 2017 WL 1138128, at *7 (D. Conn. Mar. 27, 2017) ("SSR 96-6p does not indicate that is the only circumstance in which a non-treating source's opinion can be given great weight; in fact, it begins the quoted sentence with the phrase 'for instance,' indicating that there may be other possibilities.").

examining consultant's] conclusions," the Second Circuit remanded to the ALJ. *Id.* at 298.[7] But in *Camille v. Colvin*, the Second Circuit reached the opposite conclusion in a non-precedential opinion, rejecting an argument that a non-examining source was "stale" solely because a non-examining source did not review later submitted evidence where "th[at] additional evidence does not raise doubts as to the reliability of [the non-examining source's] opinion." 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (distinguishing *Hidalgo*, 822 F.2d at 295–96, 298)). In that case, because the later opinion evidence did not differ materially from the opinions that the non-examining physician did consider, the Second Circuit found that the ALJ committed no error by relying on the non-examining physician. *Id.*

This case is more like *Hidalgo* than *Camille*. The non-examining consultant, Dr. Kuslis, reviewed West's claim on October 14, 2014, almost two years before ALJ's July 18, 2016 hearing. (R. 23, 87.) Dr. Kuslis concluded in relevant part that West had *no* manipulative limitations because there was "no supportive evidence of recurrent [carpal tunnel syndrome] other than subjective weakness on exam [by Dr. Marshall]" and further that West could "stand/walk 6 hours a day" with certain lifting/carrying restrictions, because West had reported in her activity logs that she could "shop for 4 hours[,] walk for an hour." (R. 86–87.) With cursory explanation, the ALJ

---

[7] As stated in *Camille*, 652 F. App'x at 28 n.4, the portion of *Hidalgo* stating that the "opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physician's diagnosis," 822 F.2d 297, has been abrogated. But the principle endures that an ALJ may not rely on the stale opinion of a non-examining consulting physician where subsequent evidence may alter those findings, as recognized by the Second Circuit and other judges in this district. *See Tarsia v. Astrue*, 418 F. App'x 16, 18 (2d Cir. 2011) (summary order) ("Because it is unclear whether [the non-examining physician] reviewed all of [claimant's] relevant medical information, his opinion is not 'supported by evidence of record' as required to override the opinion of [the] treating physician . . . ."); *see Jazina v. Berryhill*, No. 3:16-CV-01470 (JAM), 2017 WL 6453400, at *7 (D. Conn. Dec. 13, 2017) ("The ALJ erred in assigning significant weight to the state agency medical consultants' under-informed opinions [based on an incomplete record] and in allowing their opinions to override those of plaintiff's treating physicians.").

gave Dr. Kuslis' opinion "great weight," thus overriding the opinions of the examining physicians, Drs. Atac or Marshall:

> [T]he opinion of the State agency medical consultant is accorded great weight. It is well supported by explanation and reference to relevant medical evidence. Evidence received at the hearing level does not support a finding of symptom worsening or greater functional impairment.

(R. 20.) Dr. Kuslis, however, could not have reviewed any medical evidence submitted after October 2014. (R. 84 (reviewing "recon medical evidence" through August 2014).)[8] *See Tarsia*, 418 F. App'x at 18 (remanding where it was simply "unclear whether [non-examining consultant] reviewed all of [claimant's] relevant medical information."). Here, that subsequent medical evidence *did* reflect objective symptoms of West's carpal tunnel syndrome and suggested that West's daily activities were far more limited than Dr. Kuslis had concluded. At least two subsequent reports of Dr. Cohen, a neurological specialist, showed a Tinel's sign upon a physical examination. (R. 372, 374 (exam by Dr. Cohen showing bilateral Tinel's sign April, August 2015).) In addition, physical examinations by rheumatologist Dr. Suma Dasari documented tenderness of "left [medial coronoid process] [below] elbows" in March 2016 (R. 417, 420) and tenderness in the shoulders and elbows a month later (R. 409, 411). And finally, Dr. Kuslis did not consider or reconcile the opinion of West's primary treating physician, Dr. Atac, who had examined West monthly for over two years. (R. 389.) That opinion, which was supported by "x-rays, MRIs, [and] labs," concluded that West could "perform a job standing and/or walking" for less than an hour and had significant limitations in reaching, handling, and fingering. (R. 389–93.) Though Dr. Kuslis discounted Dr. Marshall's findings as contradicted by West's daily activity reports and based on "subjective" reports of hand weakness (R. 87), Dr. Cohen and Dr. Sumari's

---

[8] It is unclear from the record the last evidence that Dr. Kuslis reviewed, but the Commissioner does not dispute that Dr. Kuslis only reviewed a limited record. (ECF No. 18 at 6-7.)

exam findings are supportive of Dr. Atac's opinion as a treating physician, and thus this evidence viewed in tandem "may have altered [Dr. Kuslis'] conclusions." *Hidalgo*, 822 F.2d at 298. Accordingly, the "ALJ erred in placing [great] weight on [Dr. Kuslis'] possibly ill-founded opinion . . . ." *Tarsia*, 418 F. App'x at 18. Because the ALJ placed "great weight" on Dr. Kuslis' opinion in formulating the RFC, and because no other medical opinion cited by the ALJ fully supported the RFC, remand is warranted. *See id*; *Hidalgo*, 822 F.2d at 298 (both remanding for further consideration due to ALJ's erroneous reliance on stale opinion by non-examining physician). On remand, the ALJ should direct the non-examining consultant (either Dr. Kuslis or another) to review and address all of the information in West's file in formulating his or her revised RFC Assessment. The Commissioner is also free to direct such further medical examination and analysis as may be appropriate. *See Tarsia*, 418 F. App'x at 19.

**III.    Conclusion**

The ALJ correctly applied the treating physician rule to the opinion of West's treating physician, and substantial evidence supported the "little weight" the ALJ gave to the opinions of the treating physician and the agency's examining consultant. However, the ALJ improperly relied on an opinion of a non-examining consultant that was contradicted by subsequent evidence. Thus, West's motion for judgment on the pleadings (ECF No. 14) is GRANTED in part and DENIED in part, the Commissioner's motion to affirm is DENIED (ECF No. 18), and the case is REMANDED to the Commissioner for further proceedings. On remand, the ALJ should direct the non-examining consultant to review and address all of the information in West's file in formulating his or her revised RFC assessment. The Commissioner is also free to direct such further medical examination and analysis as may be appropriate.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            January 16, 2019